# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>REY JOEL SOTO-LOPEZ,<br><br>                    Defendant. | Case No. 3:19-cr-00114-JMK-MMS<br><br>**INITIAL REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS EVIDENCE [DOC. 17]** |

## I. MOTION PRESENTED.

On October 15, 2019, Defendant Rey Joel Soto-Lopez (Soto-Lopez) was charged in a three-count indictment with: 1) possession with intent to distribute controlled substances; 2) possession of a firearm in furtherance of a federal drug trafficking crime; and 3) felon in possession of firearms. [Dkt. 2]. Soto-Lopez, through counsel, filed a motion [Dkt. 17], and a memorandum in support of the motion [Dkt. 18], to suppress all evidence found in Soto-Lopez's car "through searches by Alaska State Troopers on March 24-25, 2019." [Dkt. 17 at 1]. The Government filed a response opposing the motion to suppress. [Dkt. 21). Soto-Lopez, through counsel, filed a reply brief in support of the motion to suppress, in which he requested an evidentiary hearing on the motion. [Dkt. 34]. On January 28, 2020, this Court held an evidentiary hearing on the motion to suppress. (*See* Transcript of Hearing at Dkt. 52]. Soto-Lopez, through counsel, filed a

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                              Page 1
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 1 of 16

post-hearing supplemental brief in support of the motion to suppress [Dkt. 50]. The Government filed a post-hearing sur reply to Soto-Lopez's motion to suppress. [Dkt. 51].

For the reasons set forth below, Soto-Lopez's motion to suppress should be DENIED.

## II. FACTUAL BACKGROUND

On March 14, 2018, Soto-Lopez was released on discretionary parole in connection with his conviction for a prior state felony offense.[1] Among Soto-Lopez's conditions of parole were conditions that prohibited or restricted his possession of certain items (drugs, alcohol, weapons, etc.), and permitted warrantless searches for the same, under certain circumstances. [Dkt. 21-1]. Specifically, a condition of his parole was that "upon request by or at the direction of a parole officer at any reasonable time, I will submit to a search of my person, my personal property, my residence, my vehicle, or any vehicle under which I have control, for the presence of alcoholic beverages." [*Id.* at 4].

On March 24, 2019, at approximately 2:38 pm, Alaska State Trooper Howard (Howard) conducted a traffic stop on Soto-Lopez after observing him traveling 81 miles-per-hour in a 55 miles-per-hour speed zone near milepost 58.5 on the Sterling Highway. [Dkt. 18 at 2]. Upon being stopped, Soto-Lopez advised Howard that he was a felon on parole for a prior state murder conviction and was traveling without a travel pass. [Dkt.

---

[1] Soto-Lopez's Motion to Suppress states that he was released on September 8, 2018 [Dkt. 18 at 2] but the Order of Discretionary Parole lists the release date as March 14, 2018. [Dkt. 21-1 at 2]. In either event, there is no question that Soto-Lopez was on parole, and subject to the release conditions attached at Dkt. 21-1, on March 24, 2019.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress Page 2
Case 3:19-cr-00114-JMK-MMS Document 59 Filed 06/08/20 Page 2 of 16

18 at 1-3]. Based upon Soto-Lopez's disclosures, Howard hand-cuffed Soto-Lopez and secured him in the patrol car pending completion of the traffic stop. Howard then radioed dispatch, requested that Soto-Lopez's parole officer be advised of the stop, and asked about any procedures, beyond those relating to the ordinary purpose of the traffic stop, that he should take on behalf of parole services. [*Id.* at 3]. Dispatch advised Howard that the parole officer—Eileen Ferrar—wanted Soto-Lopez's car searched for alcohol.[2] [*Id.*]. At minute 12:16 on the dashcam footage, Howard approached Soto-Lopez's vehicle and began to conduct a search of the front section of Soto-Lopez's vehicle, beginning with the car door. At 12:45, Howard held something up to his nose and audibly smelled it. At 13:15 he began searching the interior front passenger section of the vehicle. At 14:03 he briefly stopped searching to speak with the dispatcher, who informed him that Soto-Lopez's P.O. had confirmed that he did not have a travel permit and wanted Howard to 1) issue Soto-Lopez a ticket; and 2) have him report to Anchorage probation on Tuesday. At 14:38, before recommencing his search, Howard asked dispatch whether the P.O. had said anything about marijuana, to which dispatch responded "they didn't mention, but I can check?" Howard responded "They didn't have any. I was just curious." During that exchange Howard was conducting a search of the vehicle's center console and ultimately found: 1) a digital scale; and 2) three small Ziploc baggies, two of which appeared to have heroin residue in them, one of which appeared to have a small amount of heroin in

---

[2] Specifically, dispatch stated "PO's requesting a search for alcohol." (Exhibit 6 at 11:21.). While dispatch did not specifically refer to a search of the vehicle for alcohol, given that the direction was given in the context of a traffic stop, it is reasonable to conclude that the PO was authorizing a search of both Soto-Lopez's vehicle and person for alcohol.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                             Page 3
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 3 of 16

it.[3] [*Id.;* Dkt. 21 at 2]. After walking around to the passenger side of the vehicle at 15:39 (Exhibit 6), he also found several used syringes within a tote bag on the passenger-side floor board. [Dkt. 18 at 3; Dkt. 21 at 2-3]. At 17:40 Howard then proceeded to open the rear-hatch of the vehicle and conduct a quick search of its contents, which appeared to mostly consist of a plastic bag and orange duffle or backpack—but found nothing. At 18:20 he moved to the right rear passenger seat and conducted an approximately 20 second search but also found nothing of note. Howard subsequently photographed the vehicle from behind, then opened the drivers-side door and leaned in to arrange and take photographs of the items he had removed from the center console and placed on the driver's seat.

Based upon his discovery of the baggies, scale, and syringes, Howard, through dispatch, re-contacted Soto-Lopez's parole officer, who advised the Trooper to arrest Soto-Lopez for violation of parole conditions. [Dkt. 18 at 3]. Soto-Lopez was then arrested, and Howard conducted a complete and more thorough search of the car, but found no additional items of contraband or other evidentiary value. [*Id.*].

When Soto-Lopez asked Howard what would happen to his vehicle, Howard responded "its gonna get impounded. . . it's gonna go to Soldotna." [Exhibit 6 at 46:19]. Soto-Lopez then asked if someone could come get it from Anchorage, to which Howard responded that he could not because he lacked cellphone reception and couldn't wait

---

[3] At 14:54 Howard reported finding a "scale and what looks like an ounce of heroin." (Exhibit 6).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress  Page 4
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 4 of 16

there. After completing his search of Soto-Lopez's car, Howard, through dispatch, called for a tow truck to remove the car from the roadside. [*Id.* at 4]. Soto-Lopez asked if he could arrange to have someone pick up his vehicle, but Howard said that he could not because he had "already called for a tow truck." [Dkt. 18 at 4; Dkt. 21 at 3]. Another trooper waited with the vehicle until a driver from ASAP Towing, Ira Beck, arrived with a flatbed truck. [Dkt. 21 at 3]. During the evidentiary hearing, Beck testified that he received no instructions from dispatch, or any trooper on the scene when he arrived, about what he should do with Soto-Lopez's car, beyond simply take it to ASAP's lot. [Dkt. 52 at 137]. Beck drove the car onto the back of his flatbed truck, secured it with four straps, and then drove his truck to the ASAP Towing lot. [*Id.* at 137-8]. Approximately three and a half hours after Howard initially stopped Soto-Lopez, Beck phoned the Alaska State Troopers and reported finding drugs in Soto-Lopez's car. [Dkt. 18 at 4]. Based upon Beck's testimony during the evidentiary hearing, he "noticed the contraband in the back seat" of the car when he went to remove the vehicle from the flatbed. [4] [Dkt. 52 at 138]. Specifically, per Beck:

> I got in the vehicle, was going to back it off the truck, put my arm behind the passenger's seat, looked in the back. There's a[n unzipped but closed] case in the back seat, probably a two-inch triangle sticking out of it, corner of a plastic bag. Had meth in it. That's when I got out of the vehicle, relocked the vehicle down to the bed. Called the troopers and said it was coming their way. [Dkt. 52 at 139].

---

[4] While both Soto-Lopez and the Government, in their respective filings [*e.g.* Dkt. 21 at 3] stated that Beck told the troopers that he had found the suspected drugs during an inventory search of the vehicle, according to Beck's testimony at the evidentiary hearing, ASAP towing does not perform inventory searches. Rather, they simply "take a scan of what's in the vehicle when [they] get in and out of" it to look for "low hanging fruit. . . like an iPad sitting in the seat." [Dkt. 52 at 143]. If they do find low hanging fruit, per Beck, they lock it in a secure place. *Id.*

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress  Page 5
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 5 of 16

According to Beck, he recognized that the substance in the corner of the plastic bag was meth because he is "in the towing business. . . [and] see[s] a lot of it. . . [since] 90 percent of the stuff [they] pick up these days is drug-related." [*Id.* at 140]. Beck also stated that he was, at that point, unaware of the reason that Soto-Lopez had been arrested. [*Id.*].

Beck subsequently re-secured Soto-Lopez's car to the flatbed truck and drove it to the Alaska State Troopers' Soldotna Office, where he unloaded it into their garage bay. [*Id.* at 141]. Beck reportedly told the troopers that the container with the suspected methamphetamine was in plain view on the back seat, but did not specifically point it out or provide any further instruction. [*Id.* at 142]. Beck was not interviewed by the troopers when he dropped off the car, or subsequently. [*Id.* at 143].

After securing a warrant on March 25, 2019, the troopers conducted a search of Soto-Lopez's vehicle and found a lock box "that was open slightly and appeared to have been forced on the rear passenger seat." [Dkt. 21 at 4]. The box contained methamphetamine. The troopers also found several hard-sided cases that contained methamphetamine, heroin, three loaded pistols, and a wallet containing Sotol-Lopez's social security card. [Dkt. 21 at 4]. Next to one of the cases with a pistol was a silencer that fit the pistol. In all, more than 300 grams of methamphetamine and over 60 grams of heroin were allegedly seized from Soto-Lopez's vehicle. [Dkt. 21 at 4].

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress       Page 6
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 6 of 16

On October 15, 2019, the United States charged Soto-Lopez with possession of controlled substances with intent to distribute, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime.

### III. LEGAL STANDARD

When government actors conduct a search without a warrant, even within the context of a valid investigatory stop, they have presumptively violated the Fourth Amendment.[5] Parolees do not enjoy the same Fourth Amendment protections as ordinary citizens, however.[6] Consequently, warrantless searches that would not pass constitutional muster if non-parolees were the targets, often do so when the targets are parolees.[7] Based on their diminished expectation of privacy and the need of parole officers to supervise them, parolees may be searched by law enforcement officers acting on the delegated authority of parole officers.[8]

As with other exceptions to the warrant requirement, the burden of proving that a vehicle is lawfully impounded rests with the government.[9]

---

[5] *See* Arizona v. Gant, 556 U.S. 332, 338 (2009) ("our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.') (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).
[6] *See* Smith v. City of Santa Clara, 876 F.3d 987, 991-94 (9th Cir. 2017) (noting both decreased privacy interests of, and increased governmental interest in supervising, parolees and probationers).
[7] United States v. Scott, 450 F.3d 863, 877 (9th Cir. 2006) (citing United States v. Consuelo-Gonzalez, 521 F.2d 259, 259 (9th Cir.1975)).
[8] United States v. Knights, 534 U.S. 112 (2001).
[9] Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress Page 7
Case 3:19-cr-00114-JMK-MMS Document 59 Filed 06/08/20 Page 7 of 16

Any evidence seized from a defendant in a criminal case in violation of the Fourth Amendment is inadmissible at trial, and fruits of such evidence are inadmissible as well.[10]

## IV. DISCUSSION

**A. Did AST Howard exceed the reasonable scope of a parole search authorized under state law.**

At the time Howard conducted his initial search of Soto-Lopez's vehicle, he had no personal knowledge of Soto-Lopez's specific parole conditions. The only source of authority for his search of Soto-Lopez's car was the parole officer's direction that he search the car for alcohol. Soto-Lopez contends, however, that Howard's search exceeded the scope of a search for alcohol alone and developed into a "generalized search of the car for evidence of any criminal activity." [Dkt. 18 at 6-7].[11] In particular, Soto-Lopez argues that "[a]fter opening the center console of the car [where scale and baggies were ultimately found], it was visually apparent that the area did not, and likely could not, contain alcohol." [*Id.* at 9]. Nonetheless, per Soto-Lopez, Howard "clearly remov[ed] items and look[ed] through things [in the center console] that were not alcohol or alcohol related." [*Id.* at 7]. On these points, which appear to be the linchpin of Soto-Lopez's

---

[10] Alderman v. United States, 394 U.S. 165, 171 (1969).

[11] Per Soto-Lopez, Howard
> first inspected the driver's door area of the car, pulling items out of the small cubby on the door, opening paperwork and sniffing within a small empty bag he located. . .[;] inspected the area around the driver's seat looking in locations where there could not reasonably have been alcohol or alcohol containers. . . [;] opened the small center console of the car and removed the contents, clearly removing items and looking through things that were not alcohol or alcohol related." [Dkt. 18 at 7].

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                 Page 8
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 8 of 16

argument for the search having exceed the scope of the authorized search, this Court disagrees.

This Court finds Howard's testimony, that he regularly searches the center consoles of vehicles when conducting alcohol searches due to the possibility of very small containers of alcohol being concealed there, credible. [Dkt. 52 at 82-3]. This Court also finds it objectively reasonable that, within the context of a properly conducted traffic stop of a parolee, in response to a direction from the parolee's parole officer to search for alcohol,[12] Howard would have searched the center console—and any other compartments or bags, such as a tote-bag on the passenger-side floor board of the car, within reach of the parolee while driving—that could have conceivably contained a small bottle of alcohol. This Court also finds it reasonable that Howard would have removed the contents of the center console as he conducted his search in order to confirm that there were no containers concealed beneath those items.[13]

Accordingly, because 1) Howard was acting at the direction of Soto-Lopez's parole officer when he searched the center console, and the tote-bag on the passenger-side floor board, of Soto-Lopez's car; 2) Soto-Lopez's parole conditions authorized a search of his person and vehicle for the presence of alcoholic beverages "at the direction

---

[12] In the context of a traffic stop it is reasonable to construe a dispatcher's statement that "PO's requesting a search for alcohol" [Dkt. 51 at 5] as authorizing a search of both the parolee and his vehicle for alcohol.

[13] As anyone who has ever searched for something in a center console filled with multiple items can attest, the most efficient and expedient way to do so is to remove the other contents until one can see the bottom of the console.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                                     Page 9
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 9 of 16

of a parole officer at any reasonable time;" 3) it was reasonable for Howard to have believed that a small container of alcohol could have been concealed in the center console, as well as the tote-bag; and 4) the manner in which Howard searched the center console and tote-bag was reasonable, this Court finds that Howard did not exceed the reasonable scope of a parole search authorized under state law.

## B. Was evidence discovered during the March 25, 2019 search of Soto-Lopez's car fruit of the poisonous tree?

While based upon the court's reading of Alaska Administrative Code §13 AAC 02.345(c), Officer Howard likely <u>did</u> violate Alaska state law when he had Soto-Lopez's vehicle towed,[14] for the reason explained below, the evidence discovered during the March 25, 2019, search of Soto-Lopez's car is not tainted by that violation.

### 1. AST Howard's impoundment of Soto-Lopez's vehicle was not a Fourth Amendment violation.

---

[14] Per Alaska Administrative Code §13 AAC 02.345(c):
> When a police officer arrests and detains the driver of a motor vehicle the officer shall impound and remove the vehicle to a place of safety; however, the officer shall inform the driver that he may elect to have another immediately available person, who is legally licensed to drive a motor vehicle, drive or otherwise remove the vehicle as the driver directs. The driver may designate the nearest available garage or tow car operator of his choosing to remove the vehicle. If the driver does not so indicate, the officer shall make the arrangements necessary to remove the vehicle.

Based upon this Court's reading of this section, the use of "shall" indicates that Howard had an affirmative legal obligation to inform Soto-Lopez that he could have someone of his choosing, who was "immediately available," pick up and take charge of his vehicle or, barring that, allow Soto-Lopez to designate the nearest available garage or tow truck operator of his choosing. In this case, Howard not only failed to inform Howard that he could have someone pick up his vehicle, but specifically refused his request to do so on the grounds that Howard has already called a tow truck. While the government contends that Soto-Lopez would not have had anyone available, the fact is that he was both improperly denied the opportunity to name someone, and improperly denied the opportunity to designate the garage of tow truck operator to remove his vehicle.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                 Page 10
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 10 of 16

As the Ninth Circuit has explained, "[e]vidence derivative of a Fourth Amendment violation—the so-called 'fruit of the poisonous tree,' *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)—is ordinarily 'tainted' by the prior 'illegality' and thus inadmissible, subject to a few recognized exceptions."[15] In order for evidence to be tainted, of course, it must have been derived from an actual Fourth Amendment violation. In this case, Howard's decision to instruct his dispatcher to arrange for the vehicle to be removed without first providing Soto-Lopez with the opportunity to arrange for "another immediately available person" to remove his vehicle or, in the alternative, "designate the nearest available garage or tow car operator of his choosing to remove the vehicle," did violate Alaska Administrative Code §13 AAC 02.345(c).[16] It did not, however, violate Soto-Lopez's Fourth Amendment rights, because the impoundment was warranted under the community caretaker doctrine.[17]

As the 9th Circuit has explained, "[w]hether an impoundment [of a vehicle, following its driver's arrest] is warranted under the community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or from being a target for vandalism or theft."[18] Howard testified

---

[15] United States v. Gorman, 859 F.3d 706, 716 (9th Cir.), *order corrected,* 870 F.3d 963 (9th Cir. 2017) (citing *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007)).
[16] *See infra* note 14.
[17] §13 AAC 02.345(c) provides additional steps that Howard should have followed before impounding the vehicle, and which Howard failed to follow, but that does not change the fact that he was authorized to arrange for the Vehicle's removal.
[18] United States v. Caseres, 533 F.3d 1064, 1075 (9th Cir. 2008) (citing *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir.2005) ("Once the arrest [is] made, the doctrine allow[s] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism.")).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                              Page 11
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 11 of 16

that he believed the vehicle was at risk of vandalism, due to its location in a remote section of the Sterling Highway, and this Court finds his testimony to be credible.[19] The Court also finds it objectively reasonable that a car left unattended in a remote and low foot-traffic section of the Sterling Highway might be at risk of vandalism or theft. There is no evidence that Howard had the vehicle impounded for any unlawful, non-community caretaker, purposes.[20] As Howard explained at the evidentiary hearing, "when [troopers] impound vehicles, [they] can either have an investigative impound to the trooper post and apply for a search warrant, or we can just have it impounded to the tow yard."[21] In this case he explicitly had the vehicle impounded to a private tow yard, from which Soto-Lopez could arrange to retrieve it at a later date, rather than the trooper post, which further supports the government's contention that he had no further investigatory purpose for the impound. Accordingly, this Court concludes that Howard did not violate Soto-Lopez's Fourth Amendment rights when he arranged to have the vehicle impounded to ASAP Towing's private lot.

2. **The warrantless search of Soto-Lopez's vehicle by an ASAP Towing employee did not constitute a Fourth Amendment violation because the**

---

[19] Soto-Lopez contends that "the location of the traffic stop. . . was [already] a place of safety. . ." [Dkt. 18 at 11] and that Howard thus had not reason to remove the vehicle elsewhere, but this Court is not prepared to second-guess a law enforcement officer's assessment that he had concerns that the car could be vandalized if left attended in a remote section of the Sterling Highway and has previously seen vandalized cars in similarly remote sections of the Sterling Highway. *See* Dkt. 52 at 90 (where Howard states that he believed there to be a high likelihood that a vehicle left on the "side of the Sterling or Seward Highway" would be vandalized). It is also objectively reasonable

[20] *See* United States v. Feldman, 788 F.2d 544, 553 (9th Cir.1986) (discussing unlawful motivation for impounding and inventorying vehicle).

[21] Dkt. 52 at 89.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress  Page 12
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 12 of 16

### employee who conducted the search was a private party and was not acting at the direction of law enforcement.

In this case, the search that revealed the evidence relied upon by the Troopers when they applied for a warrant to search Soto Lopez's vehicle on March 25, 2019, was conducted by a private party, Beck, who worked for ASAP Towing. As the Ninth Circuit has explained: "[w]here the search and seizure [at issue] is by private persons not assisted by or arranged for by the police, the Fourth Amendment [thus] does not apply."[22] The Supreme Court as well has "consistently construed [the Fourth Amendment's] protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."[23] This is because the Fourth Amendment's guarantee against unreasonable search and seizure was intended to restrain the activities of governmental agencies, not private conduct. The salient question is thus whether Beck's search was in any way instigated, participated in, or encouraged by any member of the Alaska State Troopers.

Based upon the facts and testimony reviewed by this Court, the answer to that question appears to be no. According to Howard's testimony, he had no prior experience with the driver or ASAP Towing; was unfamiliar with how either of them "handle[d] things;" and it was the dispatcher, rather than Howard, who chose ASAP Towing to

---

[22] United States v. Ellison, 469 F.2d 413, 415n.2 (9th Cir. 1972) (*citing* Burdeau v. McDowell, 256 U.S. 465 (1921)); Eisentrager v. Hocker, 450 F.2d 490 (9th Cir. 1971).
[23] United States v. Jacobsen, 466 U.S. 109, 113–14 (1984).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                 Page 13
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 13 of 16

impound the vehicle.[24] According to Beck's testimony, in turn, there were no special procedures or standard tasks that he was expected to perform when impounding a vehicle at the request of the troopers.[25] In this case, specifically, Beck testified that he received no instructions from the troopers beyond that he should "[t]ake it to the lot, impound it to [his] lot."[26] He also testified that he was unaware of the reason that the vehicle was being impounded.[27] It was only after transporting the vehicle back to ASAP Towing's lot, when he went to unstrap the vehicle from the back of his flatbed truck, that he "noticed the contraband in the back seat," at which point he contacted the troopers to arrange to transfer the vehicle to their possession.[28] While the fact that the Troopers reported finding a lock box that was "open slightly and appeared to have been forced on the rear passenger seat"[29] when they later executed their search warrant leads this Court to question whether Beck's search of the vehicle was as cursory and limited as he claimed, from a Fourth Amendment perspective, the intrusiveness or propriety of the search is irrelevant.[30] What matters is whether Beck acted privately, or as an instrument of the government. This Court is satisfied that he acted privately and that, as a result, his search did not implicate

---

[24] Dkt. 52 at 122.
[25] Dkt. 52 at 135.
[26] Dkt. 52 at 137.
[27] Dkt. 52 at 141.
[28] Dkt. 52 at 138.
[29] Dkt. 21 at 4.
[30] *See* Walter v. United States, 447 U.S. 649, 656 (1980) (stating, "it has, of course, been settled since *Burdeau v. McDowell* that a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and that such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully").

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                             Page 14
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 14 of 16

the Fourth Amendment , even when he turned the evidence over to the police.[31] There is, accordingly, no basis for excluding the fruits of Beck's search, or the fruits of the later search conducted by Alaska State Troopers pursuant to the warrant they received based upon the information provided by the driver.[32]

## VI. Conclusion

Therefore, this Court recommends that Soto-Lopez's Motion at Dkt. 17 be DENIED.

DATED this 8th day of June, 2020, at Anchorage, Alaska.

*s/ Matthew M. Scoble*

U.S. MAGISTRATE JUDGE

---

[31] *See* Jacobsen, 466 U.S. at 113 (holding that no Fourth Amendment "search" occurred when a private shipping company opened damaged package and turned the contents over to the government).

[32] The situation would be different if the tow truck company conducted inventory searches of all impounded vehicles pursuant to an agreement with the troopers, and the driver had found the contraband during such a search. *See* Ferguson v. City of Charleston, 532 U.S. 67, 76–77 (2001) (holding that state hospital's policy to test for evidence of cocaine use in pregnant patients was government action because it was done in conjunction with the police).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                                      Page 15
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 15 of 16

Pursuant D. Ak. L.M.R. 6(a) and Fed. R. Crim. P. 59(b)(2), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than CLOSE OF BUSINESS, **June 22, 2020**.  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012).  A district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.  *U.S. v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000).  Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before CLOSE OF BUSINESS, **June 29, 2020**.  The parties shall otherwise comply with provisions of D. Ak. L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.  *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R on Motion to Suppress                                                                                                        Page 16
Case 3:19-cr-00114-JMK-MMS   Document 59   Filed 06/08/20   Page 16 of 16