BRYAN SCHRODER
United States Attorney

ALLISON M. O'LEARY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: allison.oleary@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) No. 3:19-cr-00114-SLG-MMS |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| REY JOEL SOTO-LOPEZ, | ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE OPPOSING OBJECTIONS TO R&R**

Pursuant to Local Criminal Rule 59.1, the United States opposes defendant Rey Soto-Lopez's objections to the Report and Recommendation ("R&R") issued as Document 59. That R&R recommended that the Court deny Soto-Lopez's motion to suppress all evidence found in his vehicle. ECF Nos 59, 17.

I. **Argument**

   a. **Trooper Howard did not exceed the bounds of a parole-authorized alcohol search by removing items from Soto-Lopez's center console.**

Trooper Howard's approach to searching Soto-Lopez's center console for alcohol, *i.e.*, removing the console's contents, did not exceed the scope of the search authorized by Soto-Lopez's parole officer. There is no dispute that a search pursuant to probation search conditions extends to containers that could contain the object of the search. *See* ECF No. 18 (Soto-Lopez's motion to suppress), pp. 8-9 (citing *United States v. Gianneta*, 909 F.2d 571, 577 (1st Cir. 1990). There is also no dispute that Soto-Lopez's on-call parole officer requested a "search for alcohol" which Trooper Howard reasonably interpreted as a request to search Soto-Lopez's vehicle and person for alcohol. ECF No. 59, p. 3 n.2; ECF No. 60, p. 1 ("Defendant does not object to the factual findings[.]"). Furthermore, and as the R&R notes, "as anyone who has ever searched for something in a center console filled with multiple items can attest, the most efficient and expedient way to do so is to remove the other contents until one can see the bottom of the console." ECF No. 59, p. 9 n.13. Soto-Lopez's center console contained many items, thus by reasonably choosing to search it for alcohol by removing its contents, Trooper Howard did not exceed the bounds of the parole-authorized search. ECF No. 59, p. 3.

Soto-Lopez provides no authority for his common-sense defying argument to the contrary, and the R&R properly recommends rejecting it. ECF No. 60, pp. 1-2; ECF No. 34, pp. 3-6; ECF No. 18, pp. 5-9; ECF No. 59, pp. 8-9. Because Soto-Lopez's argument is unsupported and unreasonable, the Court should reject it as recommended in the R&R.

### b. Soto-Lopez's Fourth Amendment rights were not violated by Trooper Howard's decision to have Soto-Lopez's vehicle impounded.

Trooper Howard acted as a lawful community caretaker when, after arresting Soto-Lopez, he had Soto-Lopez's vehicle impounded. As the R&R states, "[o]nce [an] arrest [is] made, the [community caretaker] doctrine allow[s] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, *or be subject to vandalism.*" ECF No. 59, p. 11 n. 18 (citing *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008) (citing *United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005))0 (emphasis added). This is because the community caretaker doctrine recognizes the reasonableness of government actors seizing and removing from the street vehicles that "threaten[] public safety and convenience[,]" *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976), including "nuisances" such as "abandoned vehicle[s]," *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). Because Soto-Lopez was the sole occupant of his vehicle, once Trooper Howard arrested him, Soto-Lopez's vehicle became an abandoned vehicle

that Trooper Howard reasonably concluded was subject to vandalism. ECF No. 59, p. 12 n.19 (finding Trooper Howard's testimony that he was concerned for vandalism credible and objectively reasonable). There was accordingly no Fourth Amendment violation in having Soto-Lopez's vehicle towed because it was a valid action as a community caretaker. *Caseres*, 533 F.3d at 1075.

Soto-Lopez nevertheless argues that it was unreasonable for Trooper Howard to believe that his vehicle could be at risk for vandalism. ECF No. 60, p. 3. His argument ignores the fact that the remoteness of the stretch Sterling Highway where he was pulled over is readily apparent from Trooper Howard's dashboard camera footage submitted by the United States as an exhibit, and Trooper Howard's testimony to this fact. *See* ECF No. 60, p 12 n. 19 (finding credible Trooper Howard's testimony that Soto-Lopez's vehicle was in a remote section of the Sterling Highway). As the R&R finds, Trooper Howard's concern for vandalism was genuine and objectively reasonable, and it therefore permitted him to have Soto-Lopez's vehicle towed under the Community Caretaker Doctrine. *Caseres*, 533 F.3d at 1075 (community caretaker doctrine allows law enforcement to remove vehicles which may be subject to vandalism).

Soto-Lopez also argues that the community caretaker doctrine does not apply because Trooper Howard could have taken a different course of action. ECF No. 60, p. 3. But even assuming this were true, it would not mean Trooper

Howard's choice was not covered by the community caretaker doctrine. "The fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). "[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment *requires* such steps." *Colorado v. Bertine*, 479 U.S. 367, 373-4 (1987) (finding no Fourth Amendment violation where defendant whose vehicle had been towed and subject to inventory search following arrest "could have been offered the opportunity to make other arrangements for the safekeeping of his property"). As the Ninth Circuit made clear in *Caseres*, it does not: the Fourth Amendment permits law enforcement to seize and remove vehicles at risk of vandalism. Trooper Howard's decision to do so, accordingly, did not violate Soto-Lopez's Fourth Amendment rights. 533 F.3d at 1075.

Finally, Soto-Lopez argues that his Fourth Amendment rights were violated by Trooper Howard's failure to comply with an aspect of Alaskan administrative regulations regarding the manner for police to impound a vehicle. ECF No. 60, pp. 2, 4-6. Soto-Lopez asserts that Supreme Court precedent establishes that "[o]nly caretaking functions performed under 'reasonable police regulations relating to [impound or] inventory procedures administered in good faith satisfy the Fourth Amendment.'" ECF No. 60, p. 4 (citing *Colorado v. Bertine*, 479 U.S. 367, 374

(1987)). It does not. Rather, in *Bertine*, the case Soto-Lopez cites, the Supreme Court held that such caretaking functions are required for *inventory searches* to comply with the Fourth Amendment. *Bertine*, 479 U.S. at 374 ("We conclude that here, as in *Lafayette*, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment."). It did not hold that compliance with reasonable police regulations regarding *seizures* is necessary to satisfy the Fourth Amendment. *Id.*

It is true that in dicta, a few Ninth Circuit cases have treated *Bertine's* "reasonable police regulations" requirement as applicable to seizure decisions under the community caretaker doctrine (though generally in cases where there was no dispute that the applicable regulations had been followed). *See, e.g.*, *United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016) (finding no Fourth Amendment violation in impounding vehicle consistent with police policy where vehicle blocking parking area egress); *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005) (finding fourth amendment violation where, consistent with policy, police impounded and inventory searched vehicle parked in owner's driveway because no valid caretaker function). It is not the case, however, that there is clear, binding Ninth Circuit precedent limiting valid community caretaker *seizures* to those made in compliance with police regulation.

Moreover, and as the R&R recognized, Trooper Howard did not violate the

U.S. v. Soto-Lopez
3:19-cr-00114-SLG-MMS

Alaska Administrative code's provisions regarding the decision to seize Soto-Lopez's vehicle; at most he violated procedures about carrying out an impound after a seizure is authorized. ECF No. 59, p. 11 n.17. The applicable Alaska Administrative Code provision begins, "When a police officer arrests and detains the driver of a motor vehicle the officer shall impound and remove the vehicle to a place of safety[.]" §13AAC 02.345(c). Although the code provision goes on to instruct officers who must impound and remove a vehicle to inform drivers of a number of other rights about how to effectuate impound and removal (at least one of which Trooper Howard did not follow), the code permits seizures whenever a motor vehicle's driver is arrested and detained. *Id.* Soto-Lopez does not dispute that Trooper Howard arrested and detained him, or that he had been driving the vehicle, thus there was no violation of applicable police provisions regarding the *decision to seize* Soto-Lopez's vehicle.

Furthermore, as the United States explained in its sur reply to Soto-Lopez's motion to suppress, "statutory violations are not themselves grounds for suppression under the Fourth Amendment." ECF No. 51, p. 7 (citing *United States v. Dreyer*, 804 F.3d 1266 (9th Cir. 2015) (en banc)). Trooper Howard's violation of statutory requirements regarding the manner of carrying out the impoundment of Soto-Lopez's vehicle is therefore not grounds for suppression in and of itself. And as explained above, the impoundment was otherwise authorized as a community

U.S. v. Soto-Lopez
3:19-cr-00114-SLG-MMS
7

caretaker function. There was thus no Fourth Amendment violation.

## II. Conclusion

For the reasons stated in this response, the United States asks the Court to deny Soto-Lopez's motion to suppress as recommend in the R&R.

RESPECTFULLY SUBMITTED June 24, 2020, in Anchorage, Alaska.

BRYAN SCHRODER
Acting United States Attorney

s/ *Allison M. O'Leary*
ALLISON M. O'LEARY
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2020, a true and correct copy of the foregoing was served electronically on the following:

Gary Colbath

s/ *Allison M. O'Leary*
Office of the U.S. Attorney