Gary C. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Counsel for Defendant Rey Joel Soto-Lopez

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00114-JMK-MMS |
|---|---|
| Plaintiff, | **DEFENDANT'S REPLY BRIEF (TO DK. 88) IN SUPPORT OF MOTION TO SUPPRESS** |
| vs. | |
| REY JOEL SOTO-LOPEZ, | |
| Defendant. | |

Defendant Rey Joel Soto-Lopez, through counsel, Gary C. Colbath, Assistant Federal Defender, pursuant to the Court's order, Dk. 93, files this reply to the government's brief in opposition to Defendant's Motion to Suppress, Dk. 88.

## I. INTRODUCTION

The government's response here puts forth its misleading narrative about the nature of the evidence in the case and ignores material other facts relevant to Defendant's motion. Based on the facts and arguments set forth below, as well as those set forth in Defendant's initial motion, the Court should conduct an evidentiary hearing related to this motion, and thereafter grant Defendant's motion.

## II. FACTS

In addition to the facts set forth in Soto-Lopez's original motion to suppress, Soto-Lopez agrees that Trooper Howard's in-car camera captured an accurate video of his

traffic stop and the subsequent searches of Soto-Lopez's car *done at the scene of the stop.* The search challenged by this motion is the search done pursuant to the state-issued search warrant, conducted the next day at Trooper post.

During the traffic stop, Trooper Howard searched Soto-Lopez's car twice and photographed various items within the vehicle. After conducting his initial search, Howard returned to his patrol car, read Soto-Lopez his rights, and interviewed him. During the conversation, Howard was contacted by another Trooper who, at Howard's request, stopped a black Mercedes that had driven by Howard's location a couple of times. During the radio communication between the officers, the other Trooper asked Howard if he observed any evidence of drug trafficking "besides the scales?" Howard responded by saying "negative, I only have user quantity here." See, Gov't Exhibit B, 40:28 – 40:35.

Next, Howard had already radioed dispatch to ask for "the next available 51." 51 is the designation for a tow truck. During his interview with Soto-Lopez, and after his conversation about user quantities with the other Trooper, Howard received word that ASAP Towing was in route to pick up Soto-Lopez's vehicle. Dispatch specifically asked Howard if the vehicle was to be transferred to the Soldotna Trooper post, to which Howard responded, "Negative . . . I already conducted a search, this can go to impound yard." See Gov't Exhibit B, 41:08. Having seized all the evidence relevant to his arrest of Soto-Lopez, Howard "cleared" the vehicle and released it for legal purposes back to Soto-Lopez by turning it over to the private tow company. At approximately 3:30 p.m., almost exactly an hour after he stopped Soto-Lopez, Howard left the scene of the traffic stop transporting Soto-Lopez to jail.

United States v. Rey Joel Soto-Lopez
Case No. 3:19-cr-00114-JMK-MMS                                                                                                    Page 2

The vehicle was then picked up by ASAP towing and went out of any law enforcement custody, certainly out of Soto-Lopez's custody, and into the custody of a third party (chosen by law enforcement). Law enforcement's investigation, per Howard through communication to both the other responding Trooper and dispatch, was complete. However, about three hours after picking up Soto-Lopez's car, Ira Beck of ASAP Towing called the Trooper post to report finding suspected methamphetamine in the vehicle. At approximately 6:00 p.m., Howard briefly interviewed Beck (which was not recorded) and directed Beck to bring the vehicle to the Trooper post where it was seized without a warrant. This triggered a new investigation of the vehicle and its contents.

The following day, March 25, 2019, at approximately 9:30 a.m., based upon Beck's report that additional suspected drugs were located, purportedly on the back, passenger seat of the vehicle, Howard applied for and was granted the search warrant at issue in this matter. Howard did no investigation into Beck's criminal history, pending charges or background prior to applying for the warrant. However, as the declaration filed herewith as Exhibit D-1 indicates, on that date, March 25, 2019, Beck had pending felony and misdemeanor tampering with evidence charges in State court as well as an active domestic violence protection order out against him. See, Exhibit D-1, Declaration of Sing Vang.

### III. ARUGMENT AND AUTHORITIES

The government's opposition conflates the probable cause found by Trooper Howard which allowed him to search the vehicle on the roadside in this case with the grounds asserted in Howard's affidavit in support of a search warrant during the later and

completely separate search of Soto-Lopez's vehicle. The facts and sequence of events establish that two legal determinations were made, based on separate and different information and analysis, that later of which is unsupportable.

Trooper Howard conducted a warrantless search on the roadside, presumably pursuant to both Soto-Lopez's parole conditions and parole officer's direction, as well as based on the automobile exception after finding a "user quantity" of drugs and some drug paraphernalia. However, Howard's own words made clear at the time that his search was complete and that no further grounds to detain the vehicle for continued investigation or application for a search warrant existed. Indeed, had further investigation been warranted, or probable cause for issuance of a warrant been needed, Howard would have had the vehicle towed to the Soldotna post pending application for a search warrant as the dispatcher inquired about. However, Howard instead cleared the vehicle, arrested Soto-Lopez and ended his investigation. The vehicle was given back to Soto-Lopez for legal purposes, but turned over to ASAP towing's custody, solely because Soto-Lopez was going to jail.

Hours after last seeing the vehicle, Howard was told by Beck that Beck found suspected drugs in the car. Howard had no history with Beck as an informant or someone who had provided reliable information to the police in the past. At least not that he disclosed in his reports or to the magistrate who issued the search warrant. Howard did nothing to investigate Beck's background, criminal history, or report, other than to have the vehicle brought to the Trooper post "pending application of a search warrant."

Howard was an experienced Trooper and did not apply for the warrant until the day after the traffic stop and seizure of the vehicle. He had every ability to investigate Beck's criminal history and otherwise try to confirm or corroborate the information provided by Beck. He failed to do so. Thus, he failed to provide such information to the magistrate court in the warrant application as well.

Howard's search warrant request was principally based on Beck's report. Although Howard had searched the car and found a user quantity of heroin and related drug paraphernalia, he thoroughly searched the car, including the area Beck described, and found no evidence of drug dealing or indicative of the presence of a larger quantity of drugs, much less a different type of drug. Moreover, while Beck's report was purportedly based on first-hand knowledge or observation, it was directly contrary to the observations Howard himself made just hours earlier. More importantly, Howard did nothing to corroborate it or investigate Beck.

As the government correctly notes, the veracity of an informant's information is considered when reviewing the totality of the circumstances. *United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001). However, courts may employ a number of methods to determine if an informant's information is reliable. It may be demonstrated through independent police corroboration of the information provided by an informant. See, *United States v. Freitas*, 716 F.2d 1216, 1222 (9th Cir.1983). It may also be established by admission against penal interest. See *United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Neither was the case here.

Next, Soto-Lopez has made specific allegations, alleging a deliberate or reckless disregard for the truth, and now accompanied such a claim with a detailed offer of proof. See, *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008). Howard had easy access to investigate, determine and report Beck's pending charges, existing protection order, and background to the magistrate. He either deliberately chose not to look into those matters or he recklessly disregarded his duty to do so. Either way the magistrate was not properly informed about the sole informant's background and relevant existing history at the time the report was made.

"Where the defendant makes such a showing, the Fourth Amendment requires that a hearing be held at the defendant's request." *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir.), amended, 769 F.2d 1410 (9th Cir. 1985) (citing Franks, 438 U.S. at 155–56). Suppression is warranted only if at such a hearing, the defendant provides "[c]lear proof of deliberate or reckless omission" that is also material. *Id.* at 781. Here, the Court should hold a *Franks* hearing to determine the extent of Howard's knowledge, actions, omissions, and basis for the same during the warrant request process.

The government's opposition incorrectly states that "the chief omission Soto-Lopez complains of is Trooper Howard's failure . . . [to tell the magistrate his search] included briefly opening the trunk hatch and moving items around." Docket 88, page 20. While this was in fact one such material omission (given this is the exact location Beck claimed just hours later his searched revealed a large quantity of drugs in plain sight) this is not the most material omission. The totality of omissions, Beck's pending criminal charges being the most significant, all must be taken into consideration when evaluating the

affidavit and request. This Court should consider the totality of Howard's omissions and misinformation and conclude independently that Soto-Lopez has demonstrated clear proof of deliberate or reckless omission that was material to the magistrate's probable cause finding. In doing so, the Court should find a *Franks* violation and suppress the evidence later found in the search.

Finally, the *Leon* good faith exception does not apply. Application of the exclusionary rule should continue where a Fourth Amendment violation has been *substantial and deliberate*, as in a *Franks* violation situation but the balancing approach that has evolved in determining whether the rule should be applied in a variety of contexts—including criminal trials where officers rely in good faith on a warrant. It is axiomatic that the concepts of deliberate omission and reckless disregard for the true are fully at odds with any notions of good faith. See generally, *United States v. Leon,* 104 S.Ct. 3405 (1984).

## IV. CONCLUSION

For all the reasons set forth in his original motion, together with the additional facts and arguments set forth herein, the Court should conduct an evidentiary hearing related to this motion, and thereafter grant Defendant's motion to suppress.

DATED at Anchorage, Alaska this 12th day of January, 2021.

Certificate of Service:
I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on January 12, 2021. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system. */s/ Gary C. Colbath*

Respectfully submitted,
*/s/ Gary C. Colbath*
Gary C. Colbath
Assistant Federal Defender