Gary C. Colbath
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: gary_colbath@fd.org

Counsel for Defendant Rey Joel Soto-Lopez

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:19-cr-00114-SLG-MMS |
|---|---|
| Plaintiff, | **DEFENDANT'S CLOSING ARGUMENT & SUPPLEMENTAL AUTHORITIES RE: SECOND MOTION TO SUPPRESS EVIDENCE DK. 84** |
| vs. | |
| REY JOEL SOTO-LOPEZ, | |
| Defendant. | |

Defendant Rey Joel Soto-Lopez, through counsel, Gary C. Colbath, Assistant Federal Defender, pursuant to the Court's oral order at the conclusion of the *Franks* hearing held in this matter, files this closing argument and supplemental authorities in support of his Second Motion to Suppress Evidence, Dk. 84. These authorities and argument supplement those in the original memorandum supporting the motion, Dk. 85.

## I.  FACTS

The facts have now been established in this matter and the uncontradicted testimony supports granting of Defendant's motion. With respect to former AST Trevor Howard, the evidence shows that the Court should find him not credible. He resigned from AST following an internal investigation into wrongdoing on his part. He left not subject to rehire and under the threat of termination if he did not quit. Of most relevance here, he was found to have violated Trooper Honesty policies and behavior expectations

repeatedly while on-duty serving as an Alaska State Trooper. These violations were not simply incidents or a Trooper taking unreported, extra-long lunch hours or coffee breaks. The investigation report detailed in excess of 40 instances during just a nine month period where Howard reported that he was either "on-duty" or "at post" or both, when in fact he was not. The facts show that during most of these instances, he was instead at home, doing personal things, and in his words, "likely arguing with my girlfriend." That girlfriend, Devin Drake, testified.

Ms. Drake, who has known Howard for three years, and dated and lived with him during the timeframe relevant to this case, testified that she felt Howard was both a dishonest and non-law-abiding person. Her opinions are based on her daily interactions with Howard, in 2019 and 2020, while a Trooper, and during his participation in this case. Her opinions were also not questioned, challenged, or rebutted by the government.

Related to the stop in this case, Howard testified that after leaving the scene traffic stop, he never again saw the Defendant's Honda pilot before writing the search warrant affidavit. He testified that at the scene, he did a less than thorough or adequate search. He insinuated this was due to his concern for his safety based on the Defendant's criminal record and the fact that a black Mercedes kept driving by his location during the stop. This testimony is not credible for several reasons.

First, Defendant was cooperative, not threatening, and compliant with Howard from the inception of the stop. More importantly, Howard had Defendant in handcuffs, secured in the back of the parole car throughout the stop. Second, before Howard ever finished his search of the vehicle, the black Mercedes had been stopped by Trooper King, the

driver identified and cleared, and those concerns addressed. Finally, the entire stop is on video and Howard's actions simply do not support his subsequent testimony.

The video, Exhibit D-6, shows Howard casually go back and forth between his vehicle and the Honda numerous times. It shows him search various areas of the vehicle, returning to different spots on multiple occasions and entering every single door of the vehicle, including the rear hatch to search. It shows him moving items around, laying different items out to search and photograph them. During the process Howard makes several radio calls during the search to report his findings. He speaks with dispatch and other Troopers multiple times. He never appears nervous, checks on Mr. Soto-Lopez during the search, or stops to address other traffic during the process. It is the middle of a Sunday afternoon; both the Honda and Howard's vehicles are safely off the roadway on a highway pull out and there is nothing forcing Howard to rush or otherwise skip steps in this process. The video shows a calm Trooper, in control of the situation from the start, who thoroughly conducts a parole search and then upon finding contraband items, expands the scope and veracity of his search. He documents his findings and waits for assistance to arrive before starting to transport and interview Defendant. His later contrary testimony is self-serving and incredible.

Next, Howard testified that he became reinvolved with the Honda pilot after dispatch reported to him that the tow truck driver reported finding more drugs in the vehicle. Interestingly, Howard did not record his conversation with Beck, although Howard admitted he had the ability to do so. Howard testified that he could not remember anything about the exact details of the conversation. He testified that he was unsure if

he took written notes but that if he did, those would be located in his Trooper logbook, which AST has and retains. The government failed to provide or offer any such notes to support Howard's testimony. Therefore, the Court only has the information regarding that conversation that Howard relayed in search warrant affidavit, Exhibit D-1.

With respect to that conversation and the subsequent affidavit, the Court should find the affidavit contains intentional lies and omissions. Howard wrote in the affidavit that "while doing their own inventory search of the vehicle . . ." However, Beck and ASAP Towing and Recovery owner Pat Mize testified that they do not do inventory searches. Beck also testified that he did NOT tell Howard he did an inventory search. Beck testified that he did not search of the pilot at all.[1] Next, Howard continued "he found a blueish colored case, with a wire wrapped around the perimeter of the case, hidden in the rear of the vehicle." Beck testified that he observed the blue case lying in plain view on the back seat of pilot, as he looked over his shoulder from the front seat. Again, this was consistent with Beck's testimony at the prior hearing (Dk. 52, p. 138) and consistent with his initial reports to dispatch as recorded in hearing Exhibits D-5 and D-3. When asked directly, Beck denied that he told Howard the blue case was "hidden" or "located in the rear of the vehicle."

Howard initially testified that he did not talk to any other Troopers about the contents of the vehicle. He testified that he that Beck did not tell him anything about a "safe" in the vehicle. However, Howard's affidavit requests a warrant to search "the

---

[1] Indeed, this is the second time Beck testified to this before this court. He gave consistent testimony at the first suppression hearing. See, Dk. 52, pp. 143-144.

United States v. Rey Joel Soto-Lopez
Case No. 3:19-cr-00114-SLG-MMS                                                                 Page 4

vehicle, and all of its contents to include a safe, for the presence . . ." When the specific reference to the safe was pointed out to him, Howard changed his testimony and suddenly "remembered" that he had in fact talked to one of the other Troopers about the Honda, but he could not recall the details of the conversation. Trooper Simmons testified that he could not remember whether he talked to Howard after looking at the Honda or not.

In order for Howard to have focused on the safe, to the exclusion of all the other containers located in the vehicle (including a backpack, a fanny pack, a pelican case, a tool box, and several plastic or soft-type tote bags) he had to have talked with another Trooper about their observations of the Honda. However, Howard never singled out searching for the blue case where the drugs were actually alleged to be located, and more significantly never explained to the magistrate judge that when AST came into possession of the Honda again, the blue soft case was lying on the back seat of the vehicle in plain view as opposed to "hidden in the rear" as first reported. There is no evidence that Howard did more investigation into the contradiction between where he told the magistrate judge they were found and where they were located when law enforcement observed the vehicle and case location. In fact, nothing more was said to the magistrate judge about the blue case, instead only a safe was singled out for searching. Clearly the true and actual facts regarding Beck's report and what was located in the Honda and where those things were located were not reported to the magistrate judge in the search warrant affidavit.

Howard also agreed that despite having the ability to do so, he did not look into Ira Beck's criminal history, or try to determine whether Beck may have had pending charges.

Indeed, Beck was an informant in this situation. He admitted that at the time of the traffic stop here, March 24, 2019, he had pending felony charges, and a pending misdemeanor charge related to tampering with property.[2] Thus, he was a criminal defendant with pending charges, making a report to law enforcement about potential criminal activity of others. The record is undisputed that this information was not investigated and therefore not reported to the magistrate judge. Indeed, no investigation was done into Beck's reliability or how he might have been able to even recognize potential methamphetamine sticking out of the corner of a plastic bag as reported.

Finally, Howard testified that despite his less than adequate search of the Honda, there was no way he would have missed a bag of methamphetamine sticking out of a blue soft case lying on the back seat of the vehicle during his search. Yet, during Beck's initial report to dispatch that is the location that he told them he found the case with drugs, and that is the location he has now twice testified as being where he found these items. His testimony and Howard's testimony, on this critical point that was at the heart of the basis for requesting a search warrant, cannot be reconciled. The magistrate judge simply received false and misleading information.

## II. ARUGMENT & AUTHORITIES

### A. AST illegally seized the Honda Pilot without a Warrant

The facts are undisputed that following the traffic stop, Trooper King released the vehicle from law enforcement custody to ASAP Towing on behalf of its owner, Rey Soto-

---

[2] Those charges included – Assault, Cause Fear of Injury w/ Weapon (felony); Assault, Repeat threat of Death/Injury (felony); Assault, Recklessly Injured (misd); Interfere w/ Report of DV Crime (misd); and criminal Mischief, Tamper w/ Property (misd). See Dk. 98.

United States v. Rey Joel Soto-Lopez
Case No. 3:19-cr-00114-SLG-MMS                                                                                       Page 6

Case 3:19-cr-00114-JMK-MMS   Document 158   Filed 06/14/21   Page 6 of 10

Lopez. At that point, ASAP Towing was simply a lienholder, legally entitled to hold the vehicle for the owner pending payment of the tow bill and storage fee. It is also undisputed that after Beck's report to dispatch, Trooper Simmons told Beck to bring the vehicle to AST "for safe keeping in its garage," until a warrant could be obtained. Based solely on Beck's unsubstantiated report of seeing drugs in plain view on the back seat of the car, observations that directly contradicted Howard's observations and search done just minutes prior, law enforcement did not have probable cause to seize the vehicle without first obtaining a warrant.

The vehicle was in a secure lot and Howard's testimony establishes that Defendant had no access to his car. There was no exigency or reason to suspect that the vehicle would disappear or be accessed by anyone pending AST's ability to secure a warrant. Nevertheless, AST seized the vehicle and conducted further investigation without a warrant. Such seize was unauthorized, contrary to the Fourth Amendment, and warrants suppression of all evidence subsequently seized. When a warrant has been tainted by an illegal search, the government must prove that the decision to seek the warrant was not prompted by the unlawfully viewed evidence, and that probable cause existed in the absence of the tainted evidence. *Murray v. United States*, 487 U.S. 533, 542-44 (1988).

A traffic stop is permissible if the police have reasonable suspicion to believe that a traffic violation has occurred. *United States v. Willis*, 431 F.3d 709, 715 (9th Cir. 2005). Whether the duration of a traffic stop is reasonable "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (citations

omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*

Here, Howard had reason to stop Defendant–speeding. Howard had reason to detain Defendant and search the Honda–parole search. Howard had legal reason to arrest Defendant–alleged parole violation and possession of use amounts of drugs/paraphernalia. However, the mission supported by these facts was complete and over with following Howard's searches and Defendant's arrest. Thus, Howard and King properly released the vehicle back to Defendant (albeit to ASAP Towing on his behalf). AST's authority for seizing the vehicle was over at that point. Nevertheless, based solely on Beck's subsequent report (which contradicted facts known to Howard by the way), AST again seized the Honda without a warrant.

Howard's sworn testimony is irreconcilable with the events testified to by Beck. There was no inventory search, and nothing was found hidden in the rear of the vehicle. The inclusion of this false information obviously was at the core of the affidavit Howard submitted with his request for a warrant. Howard failed to tell the magistrate judge that Beck had pending charges. Howard failed to tell the magistrate judge that Beck had broken the rear window out of Defendant's car. Pending charges and avoiding responsibility for property damage were both potential motives for Beck to lie. But if Beck is to be believed, Howard clearly provided material, false information to the magistrate court. He also made material, reckless omissions. The warrant should be stricken.

Beck's testimony, events which he has recounted consistently, twice under oath before this Court, is corroborated by and consistent with his initial reports to dispatch, as

shown by the evidence from the *Franks* hearing. However, if this Court somehow finds that Beck's testimony is not credible, and chooses instead to adopt Howard's contrary testimony, the warrant in this case must still be suppressed. If the Court finds Beck's testimony unreliable, Howard should have found the same thing. If Beck's report was unbelievable compared to Howard's, then Howard himself should have recognized the questionable aspects of his report and done further investigation or questioned Beck more extensively about his discovery. If Beck's information was incredible, it certainly cannot be found to have been sufficient to support probable cause and issuance of a warrant.

Based on the all the evidence presented at the *Franks* hearing, the Court should find that Mr. Soto-Lopez has met the burden of showing that Howard not only made false representations in this affidavit request, but also made reckless omissions of information material to Beck's potential reliability. When the false information is removed, and the omitted material added, probably cause no longer exists and the warrant must be quashed. All evidence found in the subsequent search of the already illegal seized vehicle should be suppressed.

## CONCLUSION

For all the reasons set forth in his original motion, together with the additional facts and arguments set forth herein, the Court should recommend that the District Court grant Defendant's Second Motion to Suppress Evidence.

//

//

//

DATED at Anchorage, Alaska this 14th day of June, 2021.

Respectfully submitted,
*/s/ Gary C. Colbath*
Gary C. Colbath
Assistant Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on June 14, 2021. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Gary C. Colbath*