# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>REY JOEL SOTO-LOPEZ,<br><br>               Defendant. | Case No. 3:19-cr-00114-JMK-MMS<br><br>**INITIAL REPORT AND RECOMMENDATION REGARDING SECOND MOTION TO SUPPRESS EVIDENCE [DOC. 84]** |

## I. MOTION PRESENTED AND PROCEDURAL BACKGROUND.

On October 15, 2019, Defendant Rey Joel Soto-Lopez (Soto-Lopez) was charged in a three-count indictment with: 1) possession with intent to distribute controlled substances; 2) possession of a firearm in furtherance of a federal drug trafficking crime; and 3) felon in possession of firearms. [Dkt. 2]. On December 16, 2020, Soto-Lopez, through counsel, filed a Motion to Suppress (the "Motion") [Dkts. 84 & 85], seeking to suppress all evidence taken from his car "pursuant to State of Alaska search warrant 3AN-19-925SW during searches by law enforcement on March 24 [*sic*][1] and 25, 2019." [Dkt. 84 at 1].[2]

---

[1] The Motion's reference to the March 24, 2019 search is clearly in error as search warrant 3AN-19-925SW was not issued until March 25, 2019.

[2] This is the second motion to suppress that Soto-Lopez has filed. The first was a motion to suppress all evidence found in Soto-Lopez's car "through searches by Alaska State Troopers on March 24-25, 2019." [Dkt. 17 at 1]. This Court issued a Final Report and Recommendation, at Dkt. 68, recommending that the motion be denied. The District Court adopted the Final Report and Recommendation, at Dkt. 71, agreeing with this Court's analysis and denying the motion to suppress.

In the Motion, Soto-Lopez argues that the March 25, 2019 search was "unsupported by probable cause, and the *Leon* good faith exception does not apply." [Dkt. 85 at 2]. Specifically, Soto-Lopez makes the following assertions:

1) "the affidavit supporting the primary warrant relied heavily on uncorroborated hearsay allegations and conclusory statements lacking sufficient indicia of reliability or basis of knowledge. . ."; and

2) "even assuming that the search warrant was supported by the requisite showing of probable cause, the affidavit presented to the court was replete with recklessly false misrepresentations and material omissions." [Dkt. 85 at 2].

In the Motion, Soto-Lopez also requested a *Franks* hearing, on the grounds that he could "make a substantial preliminary showing that. . . [certain] knowingly false and/or recklessly false statements and omissions were material to the magistrate's probable cause determination, and that excluding them from the warrant application[, accordingly,] negate[d] any finding of probable cause." [Dkt. 85 at 3].

The Government filed a Response in Opposition on December 31st, 2020. [Dkt. 88].

On January 7, 2021, Soto-Lopez filed a motion for an evidentiary hearing to:

1) address the parties' "disagreement over the information known to Trooper Howard, or reasonably available to him, at the time he requested the warrant . . .";

2) address the parties' disagreement regarding the information Ira Beck provided Trooper Howard in their unrecorded phone call on March 24, 2019;

3) allow the defense to "provide proof to the Court. . . that Beck had serious, relevant criminal charges pending at the time of the warrant request. . ."; and

4) allow the Court to hear "evidence related to Trooper Howard's actions, knowledge and belief, prior to determining whether a Franks violation occurred." [Dkt. 89 at 1-2].

On January 28th, 2021, at a status conference, this Court orally granted the request for a *Franks* / Evidentiary hearing. [Dkt. 101]. The Court held the *Franks* / Evidentiary hearing on May 20th [Dkt. 148] and June 8th, 2021. [Dkt. 154]. At the conclusion of the second day of hearings, the parties agreed to submit written closing arguments. Soto-Lopez, through counsel, submitted a written closing argument on June 14th, 2021, in which he argued that: 1) former Trooper Howard's testimony, at the hearings and in his search warrant affidavit, should not be found to have been credible; 2) the search warrant affidavit contained false representations and material omissions; and 3) "[w]hen the false information [in the affidavit] is removed, and the omitted material added, probable cause no longer exists and the [March 25, 2019 search] warrant must[, accordingly,] be quashed. [Dkt. 158 at 9]. The Government submitted its written closing argument on June 21st, 2021. [Dkt. 161].

For the reasons set forth below, Soto-Lopez's Motion should be **DENIED**.

## II. BACKGROUND.

This Court has already provided extensive factual background to this case in its Final Report and Recommendation on the first motion to suppress. [Dkt. 68]. The following facts are relevant for the purpose of this Motion.

## A. The Traffic Stop and Howard's Road-Side Search of the Vehicle.

On March 24, 2019, former Trooper Howard[3] conducted a traffic stop on a Honda Pilot after observing the vehicle traveling 81 miles-per-hour in a 55 miles-per-hour speed zone on the Sterling Highway. [Dkt. 68 at 2-3]. The driver was identified as Soto-Lopez. After contacting Soto-Lopez's parole officer, Howard hand-cuffed Soto-Lopez, secured him in the patrol car, and performed a search of the vehicle. [Dkt. 68 at 3]. Howard searched the front of the SUV and the center console for several minutes, but only performed cursory search of the back seat of the vehicle from the rear passenger-side door. [Dkt. 68 at 3-4].[4] Howard found several items in the front of the vehicle, including: 1) a digital scale; 2) three small Ziploc baggies, two of which appeared to contain heroin residue; and 3) several used syringes. [Dkt. 68 at 4]. When speaking with a second Trooper, Howard later referred to the amount of suspected narcotics he discovered in Soto-Lopez's vehicle as "user quantity."[5] Howard observed several containers in the rear hatch area of the vehicle but did not open them. [Dkt. 68 at 4]. Howard re-contacted Soto-Lopez's parole officer, who instructed him to arrest Soto-Lopez for a violation of parole conditions. [Dkt. 68 at 4]. Howard complied with that request.

---

[3] Howard was an Alaska State Trooper during the time of the traffic stop and warrant application, but resigned from the Alaska State Troopers on December 21, 2020.

[4] Howard spent approximately 5 minutes searching the front and center console of Soto-Lopez's vehicle. [Dkt. 88 at 3]. He spent less than a minute looking into the rear passenger area, at minutes 17:27-37 and 18:20-48 of the dashcam footage. [Dkt. 95]. He spent less than a minute looking in the rear hatch area, at minute 17:43 to 18:19. [Dkt. 88 at 4].

[5] Dkt. 96 at 2 (quoting Gov't Exhibit B, 40:28 - 40:35).

## B. Release of the Vehicle to ASAP Towing.

Howard instructed dispatch to contact a tow company to remove Soto-Lopez's vehicle from the roadside and take it to a tow lot, where it could remain until Soto-Lopez could arrange to have someone retrieve it. [Dkt. 68 at 5]. In Howard's communications with dispatch, he explained that the vehicle need not to be transported to the troopers post because he had "already conducted a search." [Gov't Exhibit B, 41:08]. Another state trooper remained with the vehicle while a tow truck driver named Ira Beck, who worked for the company ASAP Towing, arrived to tow Soto-Lopez's vehicle. [Dkt. 68 at 5]. Beck arrived on scene at approximately 4:43 p.m., approximately an hour and 25 minutes after being called. [Dkt. 121-4, Exhibit 4]. Beck secured the vehicle onto his tow truck and drove it to ASAP Towing's lot in Soldotna. [Dkt. 68 at 5]. At some point after Beck loaded the vehicle, the back window of Soto-Lopez's vehicle was broken by unspecified means. [Dkt. 159 at 24].

## C. Beck's Phone Call to the Trooper Post.

About three and a half hours after the initial traffic stop, Beck phoned the Alaska State Troopers and reported that he had noticed a blue container full of methamphetamine in the back seat of the vehicle. [Dkt 68 at 5; Dkt. 159 at 19-20]. Beck testified that the case was "sitting there" on the back seat "with crystals just sticking right out there." [Dkt. 159 at 19]. Beck also testified that he opened the case but did not perform a search of the vehicle or open any other containers, yet he did "look[] around". [Dkt. 159 at 20]. After reporting his discovery of the container, and its contents, to an Alaska State Trooper dispatcher, Beck spoke with Howard by phone, relaying additional details of his discovery. [Dkt. 159 at 25-28]. The conversation with the dispatcher was recorded, but Howard did not record his call with Beck,

despite having the tools to do so. [Dkt. 153 at 32]. Beck volunteered to bring Soto-Lopez's vehicle to the local trooper post because he "wasn't too fond" of being in possession of the vehicle while it contained potential contraband. [Dkt. 159 at 26-27]. The on-duty sergeant, Sgt. Ronny Simmons, then told Beck to bring the vehicle to the trooper post. [Dkt. 159 at 70].

**D.    The Search Warrant Application.**

Sgt. Simmons advised Howard to talk to Beck, and Howard subsequently applied for a search warrant [3AN-19-925SW] for the vehicle. [Dkt. 153 at 31]. As part of the warrant application, Howard submitted a written affidavit describing the initial traffic stop and detailing what he learned from his later conversation with Beck. [Dkt. 147-1 at 2-4]. Howard stated in the affidavit that:

> At approximately 1800 hours, Ira Beck with ASAP Towing contacted AST to report he located additional narcotics in the vehicle. I spoke with Ira briefly about this over the phone. The conversation was not audio recorded.
>
> Ira advised that while doing their own inventory[6] of the vehicle, he located a bluish colored oval case, with a wire wrapped around the perimeter of the case, hidden in the rear of the vehicle. The case appeared to be locked, however it was not. Ira observed a corner of a plastic bag sticking out of the case. Ira opened the case and located what he believes to be methamphetamine. Ira advised the bag with methamphetamine is approximately the size of his fist. Ira put the methamphetamine and case back inside the vehicle and contacted AST. The vehicle was towed to Soldotna AST pending a search warrant. [Exh. D-1 at 6].

On March 25, 2019, an Alaska state magistrate judge from the Kenai Peninsula Borough issued a warrant to search the 2006 Honda Pilot vehicle registered to Rey Soto-Lopez, based on suspicion that the Pilot contained controlled substances. [Dkt. 85 at 1]. The

---

[6] In his subsequent testimony, Beck has consistently denied conducting an inventory search or that ASAP conducts inventory searches of impounded vehicles.

property to be searched included the vehicle and its contents, including the interior of the vehicle and contents of containers within the vehicle.

## III. LEGAL STANDARDS.

When reviewing a search warrant application, a magistrate judge must determine whether, "given all the [facts and] circumstances set forth in the affidavit[,]… including the 'veracity' and 'basis of knowledge[,]'… there is a fair probability that contraband or evidence of a crime will be found in a particular place."[7] The judge may draw reasonable inferences, based upon presented evidence and testimony, to determine if probable cause exists.[8] A fair probability determination "does not require the affidavit to establish that the evidence is in fact in the place to be searched, or even that it is more likely than not to be there."[9] The judge "need only conclude that it would be reasonable to seek the evidence in the place indicated."[10]

### A. Criminal and citizen informants under Alaska law.

Under Alaska law, an individual who provides a report to police about criminal activity may be classified as either a "criminal informant" or "citizen informant."[11] Whether an individual is a citizen or criminal informant "does not turn on the bare facts of the informant's past" but instead "turns on the nature of the informant's involvement with the incident being investigated and his or her motivation for coming to the authorities."[12] A criminal informant

---

[7] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[8] *Id.* at 240.

[9] *United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019).

[10] *Id.*

[11] *Gustafson v. State*, 854 P.2d 751, 756 (Alaska Ct. App. 1993).

[12] *Id.* at 756–57 (also noting that "an individual's criminal background or lack of criminal background does not automatically determine his status… [or] mean that his or her status cannot change in future cases").

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R re: 2nd Motion to Suppress
Page 7
Case 3:19-cr-00114-JMK-MMS   Document 197   Filed 10/14/21   Page 7 of 26

who supplies law enforcement with information "in exchange for some concession… or simply out of revenge," generally "convey[s] a certain impression of unreliability."[13] With such informants, it is, accordingly, "proper to demand that some evidence of their credibility and reliability be shown."[14] A citizen informant, by contrast, "who reports a crime which has been committed in his presence[,]. . . stands on much different ground than a police informer."[15] Such an informant "acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. . . [without] expect[ing] any gain or concession in exchange for his information."[16] Accordingly, such an informant—though not necessarily the information itself—can be presumed to be credible, and police need not establish prior evidence of reliability before acting on the informant's information.[17]

Despite the presumption that citizen informants are themselves credible, to use the information they provide for probable cause purposes, some details of that information must nonetheless be verified or corroborated.[18] In assessing the reliability of informant information

---

[13] *Erickson v. State*, 507 P.2d 508, 517 (Alaska 1973) (quoting *State v. Paszek*, 184 N.W.2d 836, 842 (1971)).

[14] *Id.*

[15] *Gustafson*, 854 P.2d at 756 (quoting *Paszek*, 184 N.W.2d at 843).

[16] *Id.* (quoting *Paszek*, 184 N.W.2d at 843).

[17] *Erickson*, 507 P.2d at 518 ("We hold that a valid arrest may be made on information provided by a 'citizen informer' and that the informer's prior reliability need not be established before the arrest."). *See also Stam v. State*, 925 P.2d 668, 670 (Alaska Ct. App. 1996):

> The credibility of an informant [for purpose of determining whether the informant's information provides probable cause for a search warrant] can be established by evidence that the informant has given reliable information in the past, or by independent investigation that corroborates the informant's story, or by evidence that the informant is among those persons whom the courts presume to be credible (generally, police officers and "citizen informants"). *Schmid v. State*, 615 P.2d 565, 576 (Alaska 1980); *Gustafson*, 854 P.2d at 756–57; *Effenbeck v. State*, 700 P.2d 811, 813 (Alaska Ct. App. 1985).

[18] *See Erickson*, 507 P.2d at 518 ("some of the details must be verified before arrest occurs.").

in a warrant application, courts focus upon "how the informant came by his or her knowledge."[19] An informant who relays information acquired from first-hand observation, for instance, has a stronger "basis of knowledge," than one who provides information based upon hearsay.[20] Courts may also infer a stronger basis of knowledge from an informant who provides specific details.[21]

## B. Corroborating informant reports.

Per the Ninth Circuit, "[a]n informant's description of illegal activity is sufficient to establish probable cause if the totality of the circumstances indicate that the tip is reliable."[22] The court also notes that a "detailed eye-witness report of a crime is self-corroborating."[23] An informant's willingness to identify him or herself to a magistrate judge and provide testimony also "provides powerful indicia of veracity and reliability."[24] This is because informants who self-identify cannot make false reports with immunity, and may face criminal penalties if they provide false statements or testimony.[25]

---

[19] *United States v. Bishop*, 264 F.3d 919, 925 (9th Cir. 2001).

[20] *Id.*

[21] *Navarette v. California*, 572 U.S. 393, 399 (2014).

[22] *United States v. Elliott*, 893 F.2d 220, 223 (9th Cir.), *opinion amended on denial of reh'g*, 904 F.2d 25 (9th Cir. 1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).

[23] *Elliott*, 893 F.2d at 223 (quoting *United States v. Estrada*, 733 F.2d 683, 686 (9th Cir. 1984) (9th Cir.)).

[24] *Elliott*, 893 F.2d at 223.

[25] *See Navarette*, 572 U.S. at 400. *See also United States v. Hunley*, 567 F.2d 822, 827 (8th Cir. 1977) ("independent corroboration of informant's reliability" unnecessary when "the informant comes forward to give an eyewitness account regarding the crime under oath, and subjects himself to perjury if the information is false.") (cited with approval in *U.S. v. Elliot*, 893 F.2d at 223).

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R re: 2nd Motion to Suppress                                                                 Page 9
Case 3:19-cr-00114-JMK-MMS   Document 197   Filed 10/14/21   Page 9 of 26

## C. Standard of review and Defendant's burden.

An issuing judge's finding of probable cause "is entitled to great deference."[26] Nevertheless, if a defendant "establishes perjury or reckless disregard of the concealment of material information by a preponderance of evidence," where the concealed or falsified information would negate probable cause, "the search warrant must be voided and the fruits excluded."[27] When an affiant relies on statements made by an informant, it is "incumbent on [the Defendant] at the suppression hearing to show that not only were [the informant's]... statements false, but that the affiant... knew they were false."[28]

## D. *Franks* hearings and assessing materiality of false statements or omissions.

Per *Franks v. Delaware, w*hen a defendant makes a preliminary showing that a search warrant affidavit includes a false statement, or a statement made with reckless disregard of the truth, the defendant is entitled to a hearing to determine the validity of the warrant.[29] A defendant is also entitled to such a *Franks* hearing upon a substantial preliminary showing of deliberate or reckless omissions.[30] Following a *Franks* hearing, suppression is appropriate if, after excising the false statements from the warrant, and supplementing the warrant to correct for material omissions, probable cause is found lacking.[31] The burden of proof lies with "the

---

[26] *Elmore*, 917 F.3d at 1074.

[27] *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

[28] *Bishop*, 264 F.3d at 925 (citing to *Franks*, 438 U.S. at 155).

[29] *Franks*, 438 U.S. 154.

[30] *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended,* 769 F.2d 1410 (9th Cir. 1985).

[31] *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014). *See also Franks*, 438 U.S. at 171–72.

party challenging the warrant. . . [to] show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause."[32]

In evaluating materiality, a court must "consider the effect of any false statements or omissions."[33]

> "If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant." [*Ewing*, 588 F.3d at 1224]. "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* "If probable cause remains after amendment, then no constitutional error has occurred." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011).[34]

## IV.   DISCUSSION.

The central question this Court must answer in this case is whether the information contained within the March 25, 2019 warrant affidavit—purged of any false statements; supplemented to correct any material omissions—was sufficient to have provided the state magistrate judge with a "substantial basis for concluding that probable cause existed."[35] For the reasons explained below, this Court concludes that the affidavit did provided the judge with a basis for probable cause.

### A. Was the evidence submitted to the Alaska magistrate judge, taken on its face, sufficient to support a finding of probable cause?

Soto-Lopez argues that the March 25th search warrant was issued based upon insufficient evidence to support probable cause "to believe that Mr. Soto-Lopez's car

---

[32] *Ruiz*, 758 F.3d at 1148 (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009)).
[33] *Id.*
[34] *Id.*
[35] *Gates*, 462 U.S. at 239.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R re: 2nd Motion to Suppress                                                                 Page 11
Case 3:19-cr-00114-JMK-MMS   Document 197   Filed 10/14/21   Page 11 of 26

contained evidence of drug trafficking."[36] In support of that argument, Soto-Lopez makes

three assertions. First, he asserts that "[t]he core facts in Trooper Howard's affidavit asserting

drugs would be found in Soto-Lopez's car came were [based upon] hearsay reports from Ira

Beck."[37] Second, he asserts that the affidavit provided insufficient foundation to allow the

state magistrate judge to assess Beck's reliability as a source, and the basis of information for

Beck's claimed observations.[38] Finally, he asserts that Howard's affidavit was conclusory and

unsupported by underlying facts.[39]

Regarding Soto-Lopez's assertion that Howard relied upon hearsay reports from Beck

in his affidavit, Soto-Lopez misuses the term hearsay. Beck's report to Howard is based upon

Beck's first-hand observations. A first-hand account of observations is, definitionally, not

hearsay.[40] To the extent that Howard's use of Beck's report in the affidavit itself constituted

hearsay, it is relevant to note that the Supreme Court has repeatedly confirmed that a warrant

---

[36] Dkt. 85 at 6.

[37] *Id.* at 7.

[38] *Id.* at 8-9.

[39] *Id.* at 10.

[40] *See Bishop*, 264 F.3d at 925 (describing how information provided based upon an informant's first-hand knowledge is not "based on hearsay"); Fed. R. Evid. 803; Black's Law Dictionary (11th ed. 2019)
Soto-Lopez's argument on this point is particularly surprising in light of his acknowledgment that "[w]hen considering the basis of an informant's knowledge, a court considers 'how the informant came by his or her knowledge,' and first-hand knowledge is more compelling than hearsay." Dkt. 85 at 7 (quoting *Bishop*, 264 F.3d at 925). Soto-Lopez thus appears to be aware that information based upon first-hand knowledge is not hearsay. Soto-Lopez has also failed to present evidence, or argument, disputing the first-hand nature of Beck's knowledge.

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R re: 2nd Motion to Suppress                                                      Page 12
Case 3:19-cr-00114-JMK-MMS   Document 197   Filed 10/14/21   Page 12 of 26

may be issued based upon hearsay, so long as there is "a substantial basis for crediting the hearsay."[41]

Regarding Soto-Lopez's assertion that Howard failed to provide the state magistrate judge with sufficient information to assess Beck's reliability as a source, or to corroborate Beck's report of discovering suspected drugs in Soto-Lopez's vehicle, this Court also disagrees.

As a preliminary mater, it is important to point out that Ira Beck was a named citizen informant, not a confidential and/or criminal informant, under Alaska law.[42] That is an important distinction, which Soto-Lopez appears to have overlooked.[43] Simply put, Beck provided his information without any prompting or encouragement from a member of law enforcement; offered his full and true name, which was subsequently included in the warrant affidavit; and does not appear to have provided the information for any other purpose than

---

[41] *United States v. Ventresca*, 380 U.S. 102, 108 (1965) (quoting *Jones v. United States*, 362 U.S. 257, 272 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85 (1980)); *See also Gates*, 462 U.S. at 238 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

[42] The Court uses the phrase "confidential and/or criminal informant" because not all confidential informants are criminals, and not all "criminal informants" are registered "confidential informants." Criminal and/or confidential informants, however, are alike in that there is a presumption that they provide information in expectation of receiving something in return.

[43] *See, e.g.*, Dkt. 85 at 8 (describing standard for assessing a "confidential source's information in making a probable cause determination"); *Id.* at 9 ("[I]nformation from confidential informants is entitled to little or no weight if the information is uncorroborated. . ."); *Id.* at 17-20 (relying heavily upon, and analogizing the fact in this case to those in, *Hall*, 113 F.3d 157, a case in which a search warrant was obtained in reliance upon a criminal informant's testimony).

to "aid the police in law enforcement because of a concern for society or his own safety. . . [without] expect[ing] any gain or concession in exchange for his information."[44]

Consequently, because Beck was a citizen informant, both Howard and the state magistrate judge reviewing the warrant application were able to presume that Beck was a credible witness, without evidence of prior reliability.[45] The fact that Beck identified himself to law enforcement, and was willing to be identified by name to the magistrate judge, additionally, provided powerful indicia of the "veracity and reliability" of his information.[46] Beck's occupation as a tow truck driver for the company that towed Soto-Lopez's car, furthermore, provided Beck with a strong, and readily apparent, basis of knowledge for the information he relayed. The fact that Howard had, earlier the same day, discovered illegal narcotics in Soto-Lopez's vehicle lent additional general credibility to Beck's report of having discovered suspected methamphetamine in a container in Soto-Lopez's vehicle. It is, accordingly, this Court's conclusion that, the totality of these facts, each of which was included in the affidavit, provided the magistrate judge with sufficient information to assess Beck's reliability as a source, as well as the credibility of the information Beck provided to Howard.

Finally, regarding, Soto-Lopez's third argument, that the affidavit relied upon conclusory statements, unsupported by underlying facts: he has failed to identify which statements in the affidavit he believes are problematically conclusory. Neither this Court, nor any court, can assess the merits of an argument not made. Nonetheless, based upon this Court's review of the affidavit, for the reasons included below, this Court offers the following

---

[44] *Gustafson*, 854 P.2d at 756 (quoting *Paszek*, 184 N.W.2d at 843).
[45] *See Stam*, 925 P.2d at 670.
[46] *Elliott*, 893 F.2d at 223.

assessment: The affidavit contains sufficient factual allegations and details to have allowed a state magistrate judge to make an independent probable cause determination, independent of any conclusory statements the affidavit may or may not have contained.[47]

The affidavit described the context and basis for Howard's initial stop, subsequent search, and eventual arrest of Soto-Lopez. It described the quantity of presumptive heroin that Howard found in Soto-Lopez's car during his initial road-side search; specified the test that Howard used to confirm the presumptive presence of heroin; and explained that Soto-Lopez admitted to being a recreational drug user.[48] It established that, after Soto-Lopez was arrested, ASAP Towing took possession of the Honda Pilot, and an ASAP employee named Ira Beck subsequently contacted the Alaska State Troopers to report that he had personally found additional suspected narcotics within the vehicle.[49] The affidavit stated that Howard had "briefly" spoken to Beck about his discovery over the phone, though the conversation was not audio recorded, and Beck described making his discovery while conducting an inventory search of the vehicle.[50] It noted that Beck provided details, such as the shape and color of the suspected drug-containing-container, that the container was hidden in the rear of the vehicle, and that there was a bag of suspected methamphetamine the size of his fist within the container.[51] While Soto-Lopez is entitled to challenge the accuracy or veracity of these factual allegations, they cannot accurately be described as conclusory, given that they are

---

[47] *See Illinois*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate… to determine probable cause; his action cannot be **a mere ratification of the bare conclusions of others**." (emphasis added)).

[48] *Id.* at 5.

[49] *Id.*

[50] *Id.* at 6.

[51] *Id.*

directly attributed to either Howard's first-hand observations, a test administered by Howard, or Beck's first-hand account. The affidavit is thus distinguishable from an affidavit that relies upon conclusory statements, unsupported by underlying factual information.[52]

## B. Did Howard omit or mischaracterize material facts in the affidavit with a reckless disregard for the truth?

The second basis for Soto-Lopez's motion to suppress is his argument that Howard "made several false statements and material omissions over the course of the [search warrant] application."[53] In particular, Soto-Lopez asserts that Howard recklessly omitted material information about:

1) his "second, extensive search of the car for drug trafficking evidence;"

2) the "investigative conclusions. . . [he reached] before he gave the vehicle to Beck," namely that "the vehicle only contained 'user' amounts of drugs and was 'cleared' for release;"

3) when Beck took custody of the car and who had access to the car in the period of time before it was returned to law enforcement control;

4) Beck's reliability, both generally and specifically, as it pertained to his report; and

5) Beck's criminal history.[54]

In order for Soto-Lopez to prevail in his motion to suppress on this basis, he must show, by a preponderance of evidence, that the search warrant affidavit contained materially

---

[52] *C.f. United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012) (officers did not provide underlying facts supporting their conclusion that house was a "narcotics stash location" despite using such designation to benefit from a lower reasonable suspicion standard to search vehicles leaving the house.).

[53] Dkt. 85 at 13.

[54] Dkt. 85 at 14-18.

false statements and/or omissions; that Howard was aware of, or recklessly disregarded, those false statements and/or omissions; and that excising those false statements, and correcting those omissions, would have negated probable cause.[55] For the reasons explained below, this Court concludes that Soto-Lopez has not met that burden.

### 1. Did Howard recklessly omit or falsify material information relating to the extent of his search during the traffic stop?

Soto-Lopez argues that Howard's affidavit failed to properly describe his "extensive, probable-caused [*sic*] based search" of both the back seat and rear hatch area of the vehicle during the traffic stop.[56] Given that the net duration of Howard's backseat and rear hatch area search was less than two minutes and he only searched the backseat area via the rear passenger-side door, this Court disagrees with Soto-Lopez's characterization of the search as "extensive." Ironically, contrary to Soto-Lopez's implication that the affidavit understates the nature and extent of Howard's search, the affidavit's sparce treatment of the search, simply referring to it as his "search of the vehicle," appears to, if anything, have the opposite effect, overstating the scope of the search.[57] To the extent that the affidavit may have led the magistrate judge to

---

[55] *See Ruiz*, 758 F.3d at 1148 (citing *Ewing*, 588 F.3d at 1223) ("[T]he party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause."); *Franks*, 438 U.S. at 156 ("In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.).

[56] Dkt. 85 at 14.

[57] Dkt. 147-1 at 4.

make unwarranted assumptions, it would have been that Howard had performed a full-vehicle search but only discovered drugs in the front of the vehicle.

>    **2. Did Howard recklessly omit or falsify material information relating to the investigative conclusions he drew before relinquishing control of the vehicle to Beck?**

Soto-Lopez takes issues with what he characterizes as Howard's "fail[ure] to accurately described his own investigative conclusions at the scene of the traffic stop that occurred before he gave the vehicle to Beck."[58] Specifically, he argues that Howard's initial conclusions, based upon his search of Soto-Lopez's vehicle, that the vehicle contained only "'user' amounts of drugs and was 'cleared' for release," contradicted Beck's later account of having discovered a container with a fist-sized quantity of suspected methamphetamine in the vehicle, and thus should have been included and explained in his search warrant affidavit.[59] Per Soto-Lopez, Howard's failure to include his earlier conclusions constituted a material omission, directed at hiding the contradiction between his earlier conclusion and Beck's later account, and thereby making Beck's report appear "more reliable."[60] This Court disagrees that such an omission was material or had that effect.

As a preliminary matter, the affidavit noted that the weight of the heroin Howard discovered was .8 grams, which a state magistrate judge would know is presumably a user quantity. It was accordingly unnecessary for Howard to have pointed out that there was a contrast between the volume of illegal narcotics he initially discovered, and the volume Beck

---

[58] Dkt. 85 at 15.
[59] *See* Dkt. 85 at 14-16; Dkt. 158 at 8.
[60] Dkt. 85 at 15.

later reported discovering. It is unclear to this Court how failing to specifically point that out would have affected a probable cause determination.

Regarding Soto-Lopez's objection to Howard not specifically stating that he "cleared" the vehicle for release prior to ASAP towing taking possession of the vehicle, it is similarly unclear to this Court how failing to make such a statement would have affected a probable cause determination or misled the state magistrate judge. As a purely factual matter, it is accurate to say that Howard cleared the vehicle for release, in the sense that he released it to ASAP towing and, in so doing, indicated that neither he nor the Troopers had further investigatory interest in the vehicle. Based upon the affidavit's statement that "ASAP Towing responded to take possession of the vehicle" and later described the vehicle having to be towed to the trooper post to await a search warrant, a reviewing magistrate judge could reasonably have been expected to conclude—without being explicitly told—that Howard had cleared the vehicle for release.[61]

Soto-Lopez seems to imply, however, that Howard's failure to explicitly state that he had cleared the vehicle for release was intended to obscure the "extensive" nature of his initial search of the vehicle. [62] The video footage of the search, however, simply does not support characterizing the search as extensive. Even had Howard performed a more extended search of the vehicle, it is unclear how failing to detail such a search would have rendered Beck's subsequent report—which was specific and based upon first-hand observation—"more reliable."[63]

---

[61] Dkt. 147-1 at 3.
[62] Dkt. 85 at 15.
[63] Dkt. 85 at 16.

### 3. Did Howard recklessly omit or falsify material information relating to the sequence and timing of events?

Soto-Lopez also argues that Howard should have disclosed that Soto-Lopez's vehicle was in ASAP Towing's possession for a period of several hours, during which time "third parties… may have accessed the vehicle."[64] Per Soto-Lopez, "th[o]se omissions were important to the magistrate's determination of probable cause and would have detracted from Beck's report as given through Howard."[65] This Court, again, disagrees, for the following reasons.

First, though the affidavit did not detail the time at which "ASAP towing responded to take possession of the vehicle," the affidavit's timeline was sufficient for the state magistrate judge to draw reasonable inferences related to custody and access to the vehicle.[66] Specifically, the affidavit established that Howard initially stopped Soto-Lopez at 1438 hours, but that Beck did not contact AST to give his report until "approximately 1800 hours."[67]

Second, and more importantly, Soto-Lopez does not make any specific fact-based allegations about how this omission was material to the magistrate judge's determination that there existed a fair probability of finding methamphetamine in the vehicle. Regardless of how the blue container of methamphetamine found its way into Soto-Lopez's vehicle, as Beck reported it had, a finding of probable cause did not require that the methamphetamine actually be linked to Soto-Lopez. Even if, as the Defendant implies, there was cause to believe that the methamphetamine had been placed in Soto-Lopez's vehicle after Howard's initial search, the

---

[64] Dkt. 85 at 16; Dkt. 96 at 3.
[65] Dkt. 85 at 16.
[66] *Id.*
[67] Exh. D-1 at 6.

Alaska State Troopers would still have been obligation to investigate and seize it.[68] Probable cause does not require a "formal trial," and Howard did not need to answer all outstanding questions or find "evidence which would justify condemnation" prior to seeking a warrant.[69]

### 4. Did Howard recklessly omit or falsify material information relating to Beck's reliability and pending criminal charges?

Soto-Lopez also argues that Howard's failure to disclose Beck's, then-pending, criminal charges, was a material omission designed to deceive the state magistrate judge about Beck's reliability as an informant. This Court disagrees. Simply put, Soto-Lopez has failed to establish that Howard knew, or should have known, of Beck's pending charges when he applied for the search warrant.[70]

While Soto-Lopez relies upon *United States v. Hall* to show that an informant's criminal history may be material to his veracity under a totality of circumstances analysis, there are significant differences between the facts in *Hall* and this case.[71] First, the *Hall* informant's criminal convictions were "substantial" and included a prior conviction for making a false police report.[72] In this case, the charges against Beck were pending at the time of his report and, contrary to Soto-Lopez's assertion,[73] did not include the charge of "tampering with evidence."[74]

---

[68] *See* Dkt. 158 at 8.
[69] *Gates*, 462 U.S. at 235.
[70] While Soto-Lopez presented evidence and testimony during the *Franks* hearing that tended to decrease Howard's general credibility as a witness, the evidence was insufficient to—in and of itself—create an inference that Howard recklessly or intentionally sought to deceive the magistrate in this case, absent specific evidence of such an intent.
[71] *Hall*, 113 F.3d 157. *See* Dkt. 85 at 18.
[72] *Hall*, 113 F.3d at 158.
[73] *See* Dkt. 85 at 18 (Soto-Lopez incorrectly stated that charges against Beck "included a misdemeanor charge of criminal mischief based on Beck's alleged tampering with evidence.").
[74] [Dkt. 85 at 18].

*U.S. v. Soto-Lopez*
3:19-cr-00114-JMK-MMS
Initial R&R re: 2nd Motion to Suppress                                                        Page 21
Case 3:19-cr-00114-JMK-MMS   Document 197   Filed 10/14/21   Page 21 of 26

Second, in *Hall*, the state trooper who testified at the warrant hearing knew of the informant's convictions, but failed to disclose them, even when asked by a prosecutor.[75] In this case, Soto-Lopez has failed to establish that Howard knew or should have known about Beck's pending charges. While this there is no question that Howard had the ability to easily "confirm whether Beck had a record or outstanding criminal charges," because Beck was a citizen informant, neither state nor federal law imposed an affirmative obligation upon Howard to conduct a criminal record check on Beck before relying upon his information.[76] Howard and Sergeant Simmons have further testified that it was not standard protocol to check an individual's criminal record before relying upon their statement in a warrant application.[77] Soto-Lopez has failed to offer evidence to the contrary. Similarly, Howard and Beck have testified that they did not know each other prior to Soto-Lopez's arrest, and Soto-Lopez has failed to offer evidence to the contrary.[78] Finally. the informant in *Hall* was a criminal informant, while Beck is a citizen informant.

In addition to being unaware of facts that may have undermined Beck's credibility, Howard was aware of multiple factors that tended to increase Beck's credibility as a witness. First, Beck was a named citizen informant. Second, Howard could reasonably rely upon Beck's professional association with ASAP Towing, a company that the Alaska State Troopers had

---

[75] *Id.*

[76] dkt. 85 at 19.

[77] Dkt. 153 at 87:5-8; Dkt. 159 at 16-17. Soto-Lopez has not pointed to any authority which suggests that police are required to perform a criminal background check on a citizen informant, and Alaska law indicates that a "[citizen] informer's prior reliability need not be established" before acting on the report. *Erickson*, 507 P.2d 508.

[78] *See* Dkt. 153 at 27:13; Dkt. 159 at 12:9.

previously used for towing.[79] Third, Beck made his report based upon his personal observations. Finally, Beck's report of finding illegal narcotics in the vehicle was consistent with Howard's prior personal discovery of illegal narcotics in the vehicle.[80]

## C. To the extent that Beck and/or Howard's testimony conflicts with the Affidavit, would knowledge of those conflicts have negated the state magistrate judge's probable cause determination?

Soto-Lopez argues that Howard's statement, in the warrant affidavit, that Beck discovered the case containing the suspected methamphetamine while performing an "inventory search," and that the case was "hidden in the rear of the vehicle," constituted a materially false statement calculated to deceive the magistrate judge.[81] The basis for that argument is Beck's testimony that 1) ASAP Towing does not have a policy of performing inventory searches and that he, accordingly, would not have told Howard that he discovered the methamphetamines during an inventory search;[82] and 2) he found the case containing the methamphetamine on the backseat of the vehicle.[83] While the inconsistency between Howard's account of Beck's statement in the affidavit and Beck's testimony to this Court is sufficient to cast serious doubt upon the accuracy and/or veracity of the affidavit regarding

---

[79] *See* Dkt. 159 at 36:23 – 37:3 (ASAP did not contract with the State Troopers, but they were on the trooper's call out list.).

[80] The fact that Beck's account of the location / means by which he discovered the suspected methamphetamines in the vehicle may have led Howard to either question the thoroughness of his personal search of the vehicle or suspect that Beck conducted a more thorough and intrusive search than he claimed, does not detract from the underlying consistency of the report with Howard's prior experience.

[81] Dkt. 147-1 at 3-4. Dkt. 158 at 8 ("Howard's sworn testimony is irreconcilable with the events testified to by Beck. There was no inventory search, and nothing was found hidden in the rear of the vehicle. The inclusion of this false information obviously was at the core of the affidavit Howard submitted with his request for a warrant.").

[82] *See* Dkt. 159 at 26, lns. 7 – 9.

[83] *See* Dkt. 159 at 28, lns 8 – 11.

those facts, however, Soto-Lopez has failed to carry his burden of showing materiality. Even if this Court were to conclude that Howard—for whatever reason—misrepresented the context and location in which Beck discovered the methamphetamine, it is unclear to this Court how such a misrepresentation would have proven material to the state magistrate judge's probable cause determination.

Whether Beck discovered the suspected methamphetamines in Soto-Lopez's car during a thorough inventory search; through mere happenstance, when he glanced at the back seat of the vehicle; or in the course of satisfying his personal curiosity, rummaging through the car, contrary to ASAP Towing protocol, the credibility of Beck's report that he had discovered suspected methamphetamine in Soto-Lopez's car would not have been negated. Which is to say, even had Howard's affidavit described Beck's discovery in the way that Beck described it to the Court, it would have still supported a probable cause determination. By virtue of his status as a self-identified citizen informant, who worked for the company that had towed Soto-Lopez's vehicle and was reporting his personal observations, Beck had a strong basis of knowledge for his reported observations. The fact that Howard had already discovered smaller quantities of illegal narcotics in the vehicle lent additional credence to the claim. As this Court has explained, the standard for granting a search warrant is not beyond a reasonable doubt, but rather whether there is a fair probability that contraband or evidence of a crime will be found in a particular place."[84] Viewed in concert with Howard's prior discovery of narcotics in the vehicle, Beck's report—whether, as Howard described it in the affidavit, or

---

[84] *Gates*, 462 U.S. at 238.

as Beck described it to this Court—was clearly sufficient to establish that there was a fair probability of discovering contraband in Soto-Lopez's vehicle.

## D. Did AST seize Soto-Lopez's vehicle without a warrant?

Finally, Soto-Lopez, in his written closing argument, raises an argument regarding the towing of his vehicle from the ASAP Towing lot to the Soldotna Trooper Post.[85] The Government, in their closing argument, correctly notes that this "raises an entirely new legal basis for suppression of the evidence" unrelated to the motion at hand and not referenced in the initial motion to suppress.[86] Consequently, the Court will not address Soto-Lopez's argument at this time.

## V.    CONCLUSION.

In sum, Soto-Lopez has failed to carry his burden to show that the information contained within the March 25, 2019 warrant affidavit—purged of any materially false or misleading statements; supplemented to correct any material omissions—was insufficient to have provided the state magistrate judge with a "substantial basis for concluding that probable cause existed."[87]

Therefore, this Court recommends that Soto-Lopez's Motion at Dkt. 84 be DENIED.

DATED this 14th day of October, 2021, at Anchorage, Alaska.

*s/ Matthew M. Scoble*
CHIEF U.S. MAGISTRATE JUDGE

---

[85] Dkt. 158 at 6-8.
[86] Dkt. 161 at 11.
[87] *Gates*, 462 U.S. at 239.

Pursuant D. Ak. L.M.R. 6(a) and Fed. R. Crim. P. 59(b)(2), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than CLOSE OF BUSINESS, **October 28, 2021**.  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012).  A district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.  *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).  Objections and responses shall not exceed five (5) pages in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before CLOSE OF BUSINESS, **November 4, 2021**.  The parties shall otherwise comply with provisions of D. Ak. L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.  *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).